# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**  CASE NO: 6:19-cr-49-Orl-31EJK

**SEONGCHAN YUN**

## ORDER

This matter comes before the Court after an evidentiary hearing on the sealed Motion to Suppress (Doc. 37) filed by the Defendant, Seongchan Yun ("Yun").[1] In resolving the instant motion (a redacted version of which was filed at Doc. 27),[2] the Court has considered the Government's response (Doc. 43) and supplemental briefs (Doc. 58, 59) filed by the parties.

### I.  Background

In May 2014, STAT Industry, Inc. ("STAT"), a Florida company, was awarded a contract (the "STAT Contract") to supply steel tubing to NASA. STAT in turn contracted with CBOL Corporation ("CBOL"), a California company, to provide the tubing. The NASA contract required that the tubing be of domestic origin.

Yun was employed by CBOL Corporation and was assigned as project manager for the order of the steel tubes. CBOL obtained the tubing from a company called Specialized Metals and had it shipped to NASA. Upon its arrival in July 2014, NASA employees became suspicious that the tubing was not of domestic origin. A mill certificate accompanying the tubing

---

[1] The motion was filed under seal to preserve the confidentiality of Yun's communications, described therein, with an attorney representing his former company.

[2] In preparing the instant order, without deciding that such information would be privileged, the Court has attempted to avoid any of the redacted information from the original version of Yun's motion.

(henceforth, the "Jiuli Document") did not indicate the tubing's country of origin – the information had been redacted – but bore the name "Jiuli".  Jiuli is a Chinese steel manufacturer.

In August 2014, NASA began investigating the source of the tubing.  After contacting Specialized Metals, the investigators were informed that the tubes had been manufactured in China.  In August 2015, in response to a search warrant, NASA investigators received emails from accounts belonging to STAT employees.  The emails confirmed that Yun handled the tubing order for CBOL, and that, on June 14, 2014, after Yun suggested using Chinese materials to save money, he had been informed by a STAT employee that the tubes had to be domestically produced.

On March 30, 2016, NASA investigators travelled to California and interviewed Yun, who at that point was not employed by CBOL.  The investigators told Yun they were investigating STAT and did not suggest to him that he was suspected of any wrongdoing.  Among other things, Yun told the investigators that he did not realize the tubes had to be produced in the United States.

In July 2016, CBOL retained outside counsel to represent it in NASA's investigation about the STAT Contract.[3]  In December 2016, CBOL's outside counsel contacted Yun.  The two communicated numerous times, sometimes in person, over the next several months.  At the hearing in this matter, Yun testified that he thought CBOL's outside counsel was representing him personally in regard to the STAT Contract matter, and that, as a result, he revealed confidential information during their conversations.  CBOL's outside counsel shared at least some of this information with NASA Office of Inspector General Special Agent William Shores ("Shores"), the Government's case agent investigating the STAT Contract.

---

[3] As Yun's motion does not identify CBOL's outside counsel by name, this order will also refer to him as "CBOL's outside counsel."

In January 2017, Shores requested an interview with Yun, and Yun agreed to meet him on February 7, 2017. Yun testified that he expected CBOL's outside counsel to attend the meeting with him, as his attorney. But the night before that meeting, Yun testified, CBOL's outside counsel informed him that he would not attend because he had a "conflict of interest." Subsequently, CBOL's outside counsel texted Yun, encouraging him to meet with the NASA investigators and to answer their questions "as best you can," adding, "[b]e confident about what you know and be honest about what you don't know."

Yun met with Shores at a coffee shop the next day. Shores did not advise Yun that CBOL's outside counsel had been repeating to the Government the information that he had obtained from Yun. He also did not inform Yun that he (rather than solely STAT) was under investigation, and he did not advise Yun of his right to counsel until the end of the interview.

During the course of the interview, Shores elicited several admissions from Yun that he had not made at the March 30, 2016 interview – most notably, that Yun knew of the domestic-origin requirement and that he had redacted the country-of-origin information from the Jiuli Document. At Shores' direction, Yun memorialized his admissions in a written statement. After obtaining this statement from Yun, Shores for the first time informed Yun that CBOL's outside counsel was representing only CBOL, and that Yun could be facing criminal charges.

On March 13, 2019, Yun was indicted on one count of concealing a material fact – namely, the foreign origin of the steel tubes provided to NASA – in violation of 18 U.S.C. § 1001(a)(1) and one count of providing a false document in violation of 18 U.S.C. § 1001(a)(3). On July 29, 2019, Yun filed the redacted version (Doc. 27) of the instant motion. Initially, Yun sought to suppress 1) the statements he made to the Government on February 7, 2017, and 2) all communications between himself and CBOL's outside counsel. In response to his motion, the

Government notified Yun that it did not intend to introduce any of the communications with CBOL's outside counsel. At the hearing on this motion, counsel for Yun agreed that only the February 7, 2017 statements remained at issue.

**II.     Analysis**

Yun argues that CBOL's outside counsel, acting "hand-in-hand" with criminal investigators, deceived him into confessing, and that this deception renders his confession involuntary and inadmissible. To determine whether a confession is voluntary, courts must assess the totality of the circumstances, including both the characteristics of the accused and the details of the interrogation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The Supreme Court has long held that certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause.[4] *See Miller v. Fenton*, 474 U.S. 104, 109 (1985). However, in the case of a confession, coercive conduct by a law enforcement officer is a prerequisite for a conclusion that the confession was not truly voluntary. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). And in this case, Yun has not produced any evidence of such conduct on the part of Shores or the other agents here. The vast majority of the acts of which Yun complains were committed by CBOL's outside counsel. But even if, as Yun testified, CBOL's outside counsel deceived him into revealing confidences (which were then shared with the

---

[4] Yun has also argued that his statements were obtained in violation of the Fifth Amendment, but the Fifth Amendment does not apply here because the February 7, 2017 interview at which he made the statements was non-custodial. *See, e.g., Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (providing that prosecution may not use statements stemming from custodial interrogations without first demonstrating use of procedural safeguards to secure accused's privilege against self-incrimination). As Yun testified at the hearing, the interview was voluntary, it was conducted at a restaurant rather than a government facility, and he was never physically restrained or blocked from leaving. In addition, Yun was informed at the outset that he was free to refuse to answer Shores' questions, and that he would face no penalty if he opted to do so.

Government) and then confessing to the Government, that conduct is not attributable to law enforcement officers in the absence of evidence that CBOL's outside counsel was acting at their direction (or at least suggestion). Yun has produced no such evidence, testimonial or otherwise.

Yun also complains that, per the U.S. Department of Justice Manual, he should have been informed at his March 30, 2016 interview that he was a subject of the investigation but that, instead, he was told that he was not a subject. However, Shores testified at the hearing that he did not begin considering Yun a possible subject of the investigation until he obtained an unredacted version of the Jiuli Document, and that this occurred after the March 30, 2016 interview.[5] In the absence of evidence to the contrary, the Court finds that Yun was not a subject of the investigation at that point.

Finally, Yun argues that he should have been informed prior to the February 7, 2017 meeting that he was a target of the investigation, and that the failure to do so rendered his confession involuntary. Yun points to no case law requiring that law enforcement officers provide this information prior to a voluntary interview. To the contrary, "the Supreme Court has 'never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights.'" *U.S. v. Barner*, 572 F.3d 1239, 1244 (11th Cir. 2009) (quoting *Moran v. Burbine*, 475 U.S. 412, 422 (1986)). Upon consideration of the totality of the circumstances of this interrogation, the Court concludes that the statements made by Yun at the February 7, 2017 interview were voluntary, and the interview did not violate his rights under the Due Process Clause.

In consideration of the foregoing, it is hereby

---

[5] According to the Government's response to the instant motion, CBOL produced the unredacted version of the Jiuli Document on April 6, 2016, in response to a subpoena.

**ORDERED** that the Motion to Suppress (Doc. 37) is **DENIED AS MOOT** as to the statements made by Yun to CBOL's outside counsel and **DENIED** as to any statements made by Yun at his February 7, 2017 interview.

**DONE** and **ORDERED** in Orlando, Florida on October 11, 2019.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant