UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**                                                  CASE NO: 6:19-cr-49-Orl-31EJK

**SEONGCHAN YUN**

**ORDER**

This Matter comes before the Court on the Defendant's Motion for Judgment of Acquittal Pursuant to Rule 29(c) (Doc. 111) and the Government's Response (Doc. 114).

**I.    Background**

The evidence admitted at trial established the following facts. In May of 2014, the National Aeronautics and Space Administration ("NASA") entered into contracts[1] with STAT Industry, Inc. ("STAT"). Docs. 99-1, 99-7. Under those contracts, STAT agreed to produce steel tubing of domestic origin to NASA. *Id.* The contracts required that a Certificate of Conformity[2] accompany all tubing. *Id.* In June of 2014, STAT sub-contracted the tubing procurement to CBOL Corporation ("CBOL"). Doc. 111 at 2; Doc. 114 at 2. STAT and CBOL entered into two Contracts, identified as purchase orders 2014-04-20372[3] and 2014-05-10000.[4] The STAT-CBOL contracts did not contain any language that indicated there were domestic origin requirements. *See* Docs. 100-6,

---

[1] There were two contracts, identified as NASA contracts NNK14EA54P and NNK14MA47P.

[2] The Certificate of Conformity was required to comply with the provisions of Federal Acquisition Regulation 52.246-15.

[3] Doc. 100-6.

[4] Doc. 100-7.

100-7. The Defendant, then a CBOL employee, worked on the STAT-CBOL contracts. Doc. 111 at 2; Doc. 114 at 2-3.

CBOL acquired foreign-made tubing and caused the tubing to be shipped to a freight forwarder in Doral, Florida around July 25, 2014. Approximately four days later, the tubing was delivered to NASA. A NASA employee found a document from "Jiuli," as well as "Jiuli" markings on the tubing, inside the crate. Doc. 111 at 3; Doc. 115 at 111-112. Jiuli is a steel manufacturer in China.[5] Doc. 115 at 112. On August 25, 2014, NASA rejected the tubing based on STAT's violation of the domestic origin clause of the STAT-NASA contracts. Doc. 99-9 at 20. On that same day, STAT informed the Defendant of the rejection. The Defendant immediately sought replacement tubing of domestic origin, but he was unable to locate any.

On August 26, 2014, Yun informed STAT that he could not find a replacement product of domestic origin and gave STAT four choices: (1) give CBOL more time; (2) cancel the purchase orders; (3) have CBOL buy material directly from the mill; or (4) try to convince NASA to accept the foreign material since it conformed with all other requirements, save its origin. Doc. 99-9 at 14.

NASA later requested a Certificate of Conformity from STAT, who in turn requested a Certificate of Conformity from the Defendant. Doc. 99-49 at 1. The Defendant was apparently confused by STAT's request; the purchase order numbers were inconsistent.[6] Nevertheless, the Defendant signed a Certificate of Conformity on August 28, 2014.[7] That Certificate of Conformity

---

[5] Count I of the Indictment charged the Defendant with knowingly and willfully concealing Jiuli's Chinese address on the document, but the jury found the Defendant not guilty as to Count I.

[6] The Defendant expressed this confusion in an email dated August 28, 2014. Doc. 99-49 at 1.

[7] Another CBOL employee, Caroline Yoon, later signed amended versions of the Certificate of Conformity that included the STAT-NASA contract numbers. It is the Certificate of Conformity that the Defendant signed, and not those signed by Yoon, that was the basis for the

stated that the products conformed with the requirements of the STAT-CBOL contracts, which it identified by number. It did not mention the NASA-STAT contracts. It did not make any claims about the tubing's country of origin. At the time the Defendant signed the Certificate of Conformity, all of the relevant parties were well aware that the tubing had been rejected by NASA because it originated from a foreign source. The Certificate of Conformity signed by the Defendant was the basis for Count II of the Indictment, as to which the jury found the Defendant guilty.[8]

## II. Legal Standard

When determining whether the evidence at trial is insufficient to sustain a conviction, Federal Rule of Criminal Procedure 29 requires the Court to view the evidence in the light most favorable to the United States and accept all reasonable inferences tending to support the Government's case. *U.S. v. Hernandez*, 433 F.3d. 1328 (11th Cir. 2005).

## III. Analysis

With respect to Count II, the jury was required to find beyond a reasonable doubt that (1) the Defendant made or used a document; (2) the document was false; (3) the falsity concerned a material matter; (4) the Defendant acted willfully, knowing that the document was false; and (5) the false document was made or used for a matter within the jurisdiction of a department or agency of the United States. Doc. 98 at 10. In order for the Defendant's conviction to stand, there must have been evidence presented at trial sufficient to prove each of those elements beyond a reasonable doubt.

---

indictment. Doc. 111 at 4.

[8] Count II charged the Defendant with making a false statement to a Federal Agency in violation of 18 U.S.C. § 1001. The jury was instructed that the alleged false statement took the form of a false document. In the Indictment, the false document was identified as the Certificate of Conformity. Doc. 102 at 2.

The Defendant argues that, because the Certificate of Conformity was literally true, the second element was not, and could not be, proven beyond a reasonable doubt. The Government claims that the Certificate of Conformity "falsely stated that he had complied with all provisions of a contract to supply stainless steel tubes to NASA that required the materials be of domestic origin." Doc. 114 at 1. However, the Certificate of Conformity states that the supplies were furnished in compliance with two contracts, both of which were between CBOL and STAT—neither of which required the materials to be of domestic origin.[9] *See* Docs. 99-50, 100-6, and 100-7. The Certificate of Conformity made no representation as to the source of the tubing.[10]

There is evidence that the Defendant was told that he should provide documentation showing the country of origin and that he should provide the manufacturer's certificate of conformity, *see* Doc. 114 at 9-10, and that he failed to follow those instructions. But a failure to produce the document that the Government wanted is not the same as submitting a false document. There is no evidence or even argument that, for example, the Defendant forged a manufacturer's

---

[9] It appears that STAT thought this distinction was important. An email from the Sales department at STAT, sent on September 2, 2014, asks the Defendant to re-do the Certificate of Conformity to include Contract Number NNK14EA54P, which was a contract between NASA and STAT. Doc. 99-50 at 1. There is no allegation that the Defendant did so.

[10] As far as the Court can tell, there is no apparent reason why it would have. At that point, the Defendant had already: (1) acknowledged that the source was foreign and (2) communicated several options to STAT (to be relayed to NASA), all of which left no question as to whether the tubing was foreign or domestic in origin. It is unclear why NASA, having already seen evidence that the tubing was not domestic, took the additional step of requesting a Certificate of Conformity from Yun. There was some evidence that indicated NASA lacked immediate certainty as to whether the tubing originated in China. *See, e.g.*, Doc. 115 at 8. Agent William Shores testified that, even when he obtained documents that confirmed, via an email authored by Yun, that the tubing was not domestic, the investigation still was not complete. *Id.* at 11-12. If Yun was as instrumental in this entire process as the Government argues, it seems Yun's unequivocal statements that the tubing was foreign in origin would have been enough to complete that part of the investigation.

Certificate of Conformity and made within it a false representation that the tubing came from a domestic source.

The Government cites a variety of incidents and communications predating the Certificate of Conformity in support of its position. It is true that the Government presented evidence of deception that occurred prior to the submission of the Certificate of Conformity. That evidence was certainly relevant to Count I, which charged the Defendant with concealing a material fact prior to August 28, 2014. However, the jury chose to acquit the Defendant as to Count I, and, regardless of what deception may have occurred prior to the Certificate of Conformity, only the statements made in the Certificate of Conformity document itself are relevant here. Although the jury convicted the Defendant of Count II, there was no evidence sufficient for a determination that the Certificate of Conformity itself was false.

**IV. Conclusion**

For the foregoing reasons, it is **ORDERED** that the Defendant's Motion for Judgment of Acquittal Pursuant to Rule 29(c) (Doc. 111) is **GRANTED**. The Defendant, Seongchan Yun, is hereby deemed **ACQUITTED** of Count II of the Indictment.

**DONE** and **ORDERED** in Orlando, Florida on February 13, 2020.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant